UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH PENNELLO, | : | Civil Action No. 11-6964 (JAP) |
| | : | |
| Petitioner, | : | |
| | : | **MEMORANDUM OPINION & ORDER** |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondents. | : | |
| | : | |

This matter comes before the Court upon an application by petitioner Joseph Pennello

("Pennello" or "Petitioner"), see Docket Entry No. 1, and it appearing that:

1.   On August 4, 2011, Pennello's criminal proceedings in this District were concluded with

this Court's sentencing Pennello to 96 months of imprisonment.  See United States v.

Pennello ("Pennello-Criminal"), Crim. Action No. 11-0285 (JAP) (DNJ), Docket Entry

No. 16.  This Court's judgment included, inter alia, the Court's recommendation to the

Bureau of Prisons ("BOP") "to provide medical treatment for [Pennello's] cancerous

condition, and drug treatment to aid in his rehabilitation."  Id. at 3.

2.   On November 30, 2011, the Clerk received an application from Pennello in the form of a

letter, dated November 28, 2011, asserting that Pennello has not received any treatment

for his cancerous conditions during his confinement at the F.D.C. Philadelphia ("FDC-

Phila").  Id. at Docket Entry No. 17, 1-2. The letter asserted jurisdiction under 28 U.S.C.

§ 2241 (with a visible correction, indicating that Pennello's original choice of jurisdiction

was 28 U.S.C. § 2255), id. at 2, and requested either Pennello's immediate release from

confinement or, in the alternative, injunctive relief in the form an order directing the BOP

to initiate treatment of Pennello's cancerous condition.  Id. at 2.  Pennello's application

arrived without any filing fee and without any application to proceed in forma pauperis

("IFP").  See Pennello-Criminal, Docket.

3.      In light of Pennello's assertion that his application is made pursuant to 28 U.S.C. § 2241,

the Clerk commenced the instant habeas proceeding.

4.      To the extent that Pennello seeks release from confinement on the basis of his poor

health, Pennello's application is mis-directed to the judicial system: if Pennello is seeking

clemency or commutation release on the grounds of his health, this Court has no power to

grant it, since such power is vested exclusively in the executive branch of government.[1]

2.      To the extent that Pennello considered fashioning his application as a Section 2255

motion (as the correction in Pennello's application indicates), that motion would be

misplaced, because: (a) § 2255 envisions challenges to the sentence as imposed, see In re

Dorsainvil, 119 F.3d 245, 249 (3d Cir. 1997); Chambers v. United States, 106 F.3d 472,

---

[1]  Inmates in federal prisons suffering incurable deadly diseases can apply, post sentencing, for early medical release in several ways. These include filing a motion for reduction of sentence pursuant to: (a) the "old version" of Rule 35(b) of the Federal Rules of Criminal Procedure; (b) compassionate release under 18 U.S.C § 4205(g) and § 3582(c)(1), 132; and (c) executive clemency or commutation to the President's clemency powers.  Since reduction of sentence pursuant to the "old version" of Rule 35(b) and sentence modification under Section 4205(g) can only be used by inmates whose offense was committed before November 1, 1987, these provisions are facially inapplicable to Pennello.  Section 3582(c), which applies "to the unusual case in which the defendant's circumstances are so changed, such as terminal illness, that it would be inequitable to continue the confinement of the prisoner," see S. Rep. No. 98-225, at 121 (1984), reprinted in 1984 U.S.C.C.A.N. 3182, 3304, is also inapplicable to Pennello because his application does not indicate that his circumstances "so changed" since the time of his original sentencing four months ago.  Finally, under the executive clemency method, the prisoner must request that the President of the United States (if the prisoner is a federal inmate) or the governor of the prisoner's state (if the prisoner is a state inmate) grant him a reduction or commutation of sentence.  As a federal inmate, Pennello must apply to President Obama if he seeks clemency.

474 (2d Cir. 1997); <u>Wright v. United States Bd. of Parole</u>, 557 F.2d 74, 77 (6th Cir.

1977); and (b) Pennello's application makes it abundantly clear that Pennello does not

challenge his sentence as imposed.  <u>See</u> <u>generally</u> Docket Entry No. 1.

3.      To the extent that Pennello wishes to challenge the alleged denial of medical care,

Pennello's challenges cannot be raised in a Section 2241 petition.  Federal law provides

two avenues of relief to prisoners: a petition for habeas corpus and a civil rights

complaint.  <u>See</u> <u>Muhammad v. Close</u>, 540 U.S. 749, 750 (2004).  "Challenges to the

validity of any confinement or to particulars affecting its duration are the province of

habeas corpus . . . [while] requests for relief turning on circumstances of confinement

[fall within the realm of] a § 1983 action."[2]  <u>Id.</u>  As § 1983 applies only to state actions, it

is not available to federal prisoners; the federal counterpart is an action under <u>Bivens v.</u>

<u>Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971), alleging deprivation of a

constitutional right.  <u>See</u> <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 801 (3d Cir. 2001)

("A <u>Bivens</u> action . . . is the federal equivalent of the § 1983 cause of action against state

actors, [it] will lie where the defendant has violated the plaintiff's rights under color of

federal law.").  The Court of Appeals for the Third Circuit explained the distinction

between the availability of civil rights relief and the availability of habeas relief as

follows:

> [W]henever the challenge ultimately attacks the "core of habeas" – the
> validity of the continued conviction or the fact or length of the sentence –
> a challenge, however denominated and regardless of the relief sought,
> must be brought by way of a habeas corpus petition. Conversely, when the

---

[2]  The Supreme Court analyzed the intersection of civil rights and habeas corpus in a series of cases beginning with <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973).

challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 is appropriate.

Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002). Therefore, a prisoner is entitled to a writ of habeas corpus only if he "seek[s] to invalidate the duration of [his] confinement - either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the [government's] custody." Wilkinson v. Dotson, 544 U.S. 74, 81 (2005).  In contrast, if a judgment in the prisoner's favor would not affect the fact or duration of the prisoner's incarceration, habeas relief is unavailable and a civil complaint may be appropriate.  See, e.g., Ganim v. Federal Bureau of Prisons, 235 Fed. App'x 882 (3rd Cir. 2007) (holding that district court lacks jurisdiction under § 2241 to entertain prisoner's challenge to his transfer between federal prisons); Bronson v. Demming, 56 Fed. App'x 551, 553-54 (3rd Cir. 2002) (habeas relief was unavailable to inmate seeking release from disciplinary segregation to general population, and district court properly dismissed habeas petition without prejudice to any right to assert claims in properly filed civil rights complaint).

4.  Here, Pennello asserts undue denial of medical care, seemingly raising Eighth Amendment civil rights issues.  Therefore, his claims cannot be raised in a § 2241 habeas petition; rather, these challenges must be raised by means of a Bivens action.

5.  Unlike habeas actions, civil rights cases always require a filing fee, either as a prepayment or a series of installment payments.  See 28 U.S.C. § 1915.  The filing fee for a habeas petition is $5.00, and inmates filing a habeas petition who are granted in forma pauperis (IFP) status do not have to pay the filing fee.  See Santana v. United States, 98 F. 3d 752

(3d Cir. 1996) (filing fee payment requirements of PLRA do not apply to IFP habeas

corpus petitions and appeals).  In contrast, the filing fee for a civil rights complaint is

$350.00.  See  28 U.S.C. § 1914(a).  Inmates filing a civil rights complaint who proceed

IFP are required to pay the entire filing fee in monthly installments, which are deducted

from the prison account.  See 28 U.S.C. § 1915(b).  In addition, if a prisoner has, on three

or more occasions while incarcerated, brought an action or appeal in a federal court that

was dismissed as frivolous or malicious, for failure to state a claim upon which relief may

be granted, or because it seeks monetary relief from immune defendants, then the prisoner

may not bring another action IFP unless he or she is in imminent danger of serious

physical injury.  See 28 U.S.C. § 1915(g).  Because of these differences, courts generally

do not sua sponte re-characterize a habeas pleading as a civil rights complaint.  See

Toolasprashad v. Grondolsky, 570 F. Supp. 2d 610, 631, n. 29 (D.N.J. 2008).  Therefore,

in the event that Pennello elects to file a Bivens action asserting undue denial of medical

care, Pennello shall accompany his civil complaint either with his duly executed IFP

application or with his prepayment of the $350 filing fee.

6.      Moreover, in the event that Pennello elects to file a Bivens action asserting undue denial

of medical care, such action shall be commenced in the proper venue.  Because this case

implicates federal question jurisdiction, pursuant to 28 U.S.C. § 1331, proper venue is

governed by 28 U.S.C. § 1391(b).  This Subsection provides that

> [a] civil action . . . may . . . be brought only in (1) a judicial district where
> any *defendant resides*, *if all defendants reside in the same State*, (2) a
> judicial district in which a *substantial* part of the events or omissions
> giving rise to the claim occurred, or a *substantial* part of property that is
> the subject of the action is situated, or (3) a judicial district in which any

defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b) (emphasis supplied).  Here, Pennello is asserting denial of medical care by the prison officials at the FDC in Philadelphia.  See Docket Entry No. 1.  That facility is located with the venue of the United States District Court for the Eastern District of Pennsylvania ("EDPA").  Therefore, Pennello's Bivens challenges must be raised in the EDPA, rather than in this District.

7.    Section 1406(a) of Title 28 provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought."  28 U.S.C. § 1406(a).  Since Pennello's application was filed in this District less than a week ago, and this Court is not in possession of the EDPA civil complaint forms and of the EDPA IFP application forms, and – hence – is not in the position to direct the Clerk to serve the same for Pennello's completion, this Court finds it proper to dismiss Pennello's challenges without prejudice to Pennello's filing of a Bivens action with the EDPA, which is the proper venue for the purposes of Pennello's Eighth Amendment claims.

8.    In light of the Court's decision to dismiss Pennello's challenges without prejudice to his filing of a Bivens action with the EDPA, this Court finds it proper to detail, for Pennello's guidance and reference, the relevant legal standards.

9.    It is long established that a court should "accept as true all of the [factual] allegations in the  complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d

902, 906 (3d Cir. 1997).  Nonetheless, the Third Circuit has noted that courts are not

required to credit bald assertions or legal conclusions improperly alleged in the

complaint.  See Burlington Coat Fact. Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

Therefore, legal conclusions draped in the guise of factual allegations may not benefit

from the presumption of truthfulness.  See Nice Sys., Ltd. Sec. Litig., 135 F. Supp. 2d

551, 565 (D.N.J. 2001).  Addressing the clarifications as to the litigant's pleading

requirement stated by the United States Supreme Court in Bell Atl. Corp. v. Twombly,

550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the district

courts with guidance as to what pleadings are sufficient under Rule 8.  See Phillips v.

County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  Specifically, the Court of

Appeals observed as follows:  "While a complaint . . . does not need detailed factual

allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to

relief' . . . ."  Id.

      This pleading standard was further refined by the United States Supreme Court in

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified:

> [t]he pleading standard . . . demands more than an unadorned
> ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at
> 555 . . . .  A pleading that offers "labels and conclusions" or "a formulaic
> recitation of the elements of a cause of action will not do." [Id.] at 555.
> [Moreover,] the plausibility standard . . . asks for more than a sheer possibility
> that a defendant has acted unlawfully.  Id. [Indeed, even w]here a complaint
> pleads facts that are "merely consistent with" a defendant's liability, [the
> complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'"
> Id. at 557 (brackets omitted).  [A fortiori,] the tenet that a court must accept as
> true all of the allegations contained in a complaint is inapplicable to legal
> conclusions [or to t]hreadbare recitals of the elements of a cause of action,
> supported by mere conclusory statements[, i.e., by] legal conclusion[s] couched as
> a factual allegation . . . .  [W]e do not reject these bald allegations on the ground

that they are unrealistic or nonsensical. . . .  It is the conclusory nature of [these] allegations . . . that disentitles them to the presumption of truth. . . .

Iqbal, 129 S. Ct. at 1949-54.

The Third Circuit observed that Iqbal hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[3] which was applied to federal complaints before Twombly.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  Since Iqbal, the Third Circuit has instructed district courts to conduct, with regard to Rule 8 allegations.

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  [See Iqbal, 129 S. Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in Iqbal.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S. Ct. at 1949-50 (emphasis supplied)].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

Fowler, 578 F.3d at 210-11.   Here, Pennello's application named as defendant "the United States of America," and merely expressed Pennello's disappointment with the fact that he has not been receiving any medical treatment.  However, such generality cannot

---

[3]  The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

meet the pleading requirement, as explained in Iqbal; rather, Pennello must assert the facts showing that his constitutional rights were violated.

10.    An inmate has a protected right to be incarcerated at a place conforming to the standards set forth by the Eighth Amendment. The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition on "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976). The Eighth Amendment requires that prison officials provide inmates with adequate medical care. See Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Id. at 106. To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). Here, Pennello

asserts need for cancer treatment.  This assertion suggests a serious medical need, because

it refers to a condition which, if untreated, could result in lifelong handicap or permanent

loss.  See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326,

347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988).  "Deliberate indifference" exists

"where [a] prison official: (1) knows of a prisoner's need for medical treatment but

intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-

medical reason; or (3) prevents a prisoner from receiving needed or recommended

medical treatment."  Rouse, 182 F.3d at 197.  Furthermore, deliberately delaying

necessary medical diagnosis for a long period of time in order to avoid providing care

constitutes deliberate indifference that is actionable.  See Durmer v. O'Carroll, 991 F.2d

64 (3d Cir. 1993).  Deliberate indifference is also evident where officials erect arbitrary

and burdensome procedures that result in interminable delays that deny medical care to

suffering inmates.  See Lanzaro, 834 F.2d at 346-47.  Here, Pennello does not assert any

facts indicative of deliberate indifference: his application is silent as to any requests for

medical treatment, as it is silent as to any denials of such requests.  See generally Docket

Entry No. 1.  Therefore, in the event that Pennello elects to execute a Bivens complaint

for filing with the EDPA, this Court strongly urges Pennello to state, clearly and

concisely, the facts indicating that he sought medical care and had his requests denied or

unduly delayed.  Pennello's complaint should also clearly identify the defendants who

were personally involved in such denials of medical care.

11.     Finally, the Court notes that Pennello may not have exhausted his administrative remedies

with regard to his allegations.  For the purposes of a Bivens action, the BOP

Administrative Remedy Program is a three-tier process that is available to inmates

confined in institutions operated by the BOP for "review of an issue which relates to any

aspect of their confinement." 28 C.F.R. § 542.10.  An inmate must initially attempt to

informally resolve the issue with institutional staff.   28 C.F.R. § 542.13(a).  If informal

resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution

staff member designated to receive such Requests (ordinarily a correctional  counsel)"

within 20 days of the date on which the basis for the Request occurred, or within any

extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the

Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional

Director of the BOP within 20 days of the date the Warden signed the BP-8 response.  28

C.F.R. § 542.15(a).  The inmate may appeal to the BOP's General Counsel on a BP-11

form within 30 days of the day the Regional Director signed the BP-9 response.  Id.

Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not

received by the inmate within the time allotted for reply, "the inmate may consider the

absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

12.     This administrative exhaustion requirement applies to a wide-range of inmate complaints,

including to the challenges grounded in alleged violations of the Eighth Amendment.  See

Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Booth v. Churner, 206 F.3d 289 (3d Cir.

2000).  While this exhaustion requirement is not a jurisdictional bar to litigation, it is

strictly enforced by the courts.  This rigorous enforcement is mandated by a fundamental

recognition that the exhaustion requirement promotes important public policies. See, e.g.,

Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000) (citations omitted).  Because of the

important policies fostered by this exhaustion requirement, it has been held that there is

no futility exception to the exhaustion requirement, and no exception for the claims

seeking solely injunctive relief.  See id.; see also Canals-Santos v. Ebbert, 2010 U.S. Dist.

LEXIS 23091, at *8 (M.D. Pa. Mar. 11, 2010) ("contrary to [the inmate's] assertion that

he is exempt from the exhaustion requirement because he solely seeks injunctive relief,

the Prison Litigation Reform Act . . . makes no distinction between claims for damages,

injunctive relief, or both, and therefore, the exhaustion of administrative remedies still

would be required before filing suit.").  Instead, courts have typically required

across-the-board administrative exhaustion by inmate plaintiffs who seek to pursue

claims in federal court.  Moreover, courts have imposed a procedural default component,

holding that inmates must fully satisfy the administrative requirements of the inmate

grievance process before proceeding into federal court.  See Spruill, 372 F.3d 218.

Applying this procedural default standard to the Section 1997e exhaustion requirement,

courts have concluded that inmates who fail to fully, or timely, complete the prison

grievance process are barred from subsequently litigating claims in federal court.  See,

e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 Fed. App'x

22 (3d Cir. 2008); Jetter v. Beard, 183 Fed. App'x 178 (3d Cir .2006).  Applying this

procedural default component, an inmate cannot excuse a failure to timely comply with

these grievance procedures by simply claiming that his efforts constituted "substantial

compliance" with the statutory exhaustion requirement.  See Harris v. Armstrong, 149

Fed. App'x 58, 59 (3d Cir. 2005).  Nor can an inmate avoid this exhaustion requirement

by merely alleging that the BOP's policies were not clearly explained to him.  See Davis

v. Warman, 49 Fed. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's confusion

regarding these grievances procedures does not, standing alone, excuse a failure to

exhaust.  See Casey v. Smith, 71 Fed. App'x 916 (3d Cir. 2003).  An inmate cannot cite

to alleged staff impediments to grieving a matter as grounds for excusing a failure to

exhaust, if it also appears that the prisoner did not pursue a proper grievance once those

impediments were removed.  See Oliver v. Moore, 145 Fed. App'x 731 (3d Cir. 2005)

(failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance,

prisoner failed to follow through on grievance).[4]  Therefore, in the event Pennello did not

exhaust his administrative remedies, he should either pursue such exhaustion or be

prepared to assert the facts showing that his obligation to exhaust his Bivens challenges

administratively should be excused.

**IT IS THEREFORE** on this 5th day of December, 2011,

**ORDERED** that Petitioner's application, Docket Entry No. 1, is dismissed without

prejudice to Petitioner's raising his challenges in a Bivens complaint filed with the court having

proper venue to entertain Petitioner's claims asserting denial of medical care; and it is further

---

[4] This broad rule, however, admits of one narrow exception.  If the actions of prison officials in some fashion contributed to inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000).  However, courts have recognized a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  Davis, 49 Fed. App'x at 368.  Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," and an inmate can defeat a claim of failure to exhaust only by showing "he was misled [by the prison officials as to his obligation to exhaust] or that there was some extraordinary reason he was prevented from complying with the statutory mandate."  Harris, 149 Fed. App'x at 59; Davis, 49 Fed. App'x at 368.

**ORDERED** that the Clerk shall administratively terminate this action; and it is finally

**ORDERED** that the Clerk shall close the file on this matter by making a new and

separate entry on the docket reading "CIVIL CASE TERMINATED" and serve this

Memorandum Opinion & Order upon Petitioner by certified mail, return receipt requested.


/s/ Joel A. Pisano
**JOEL A. PISANO**
 **United States District Judge**